May I please the court? I would like first to make a word of this court that I'm suffering from a bad cold so if my voice fails during the course of this argument I would like the court to take notice of that. That's fine but just don't get any closer. Secondly I would like to reserve two minutes for rebuttal. Your Honor, this case deals with a conspiracy case specifically to distribute 48 kilos of cocaine into Puerto Rico coming from St. Thomas. We have submitted to this court that the government has failed to establish beyond reasonable doubt that Mr. Martinez-Lantigua willingly or unknowingly and voluntarily joined this conspiracy knowing that this conspiracy was about the distribution of 48 kilos of cocaine. The undisputed facts in this case clearly establish that Mr. Martinez-Lantigua was nowhere around during the course of this investigation. This investigation lasted one week. During one week an undercover agent met with several co-defendants in this case, made plans as to how the drugs were going to be brought from St. Thomas into Puerto Rico, how they would be distributed and how the participants would entertain this conspiracy. During that week Mr. Martinez-Lantigua was not mentioned, was nowhere around. The agent during his testimony in court clearly established that he didn't know anything about Mr. Martinez-Lantigua during the course of that week of investigation. It was not until July 12th, the day that the distribution was supposed to take place, that Martinez-Lantigua appeared in the site, in the place that those distribution was supposed to take place. It is important, Your Honor, to point out that once Mr. Martinez-Lantigua was arrested, his cell phone was seized and it was examined, it was inspected by the agents and they didn't find any communication between Mr. Martinez-Lantigua and the other co-defendants in this case. There was no evidence that Mr. Martinez-Lantigua had in any way agreed to participate in this type of conspiracy based on the evidence collected prior to his arrest and by the inspection of his cell phone number. So we ask whether or not if you have a person who was supposed to be a driver of 48 kilos of cocaine, why they didn't have any communication between the other co-defendants and this appellant in order to establish his participation? What was he supposed to do during the distribution of these 48 kilos? Would you agree that somebody could be made part of a conspiracy at last moment? Yes, Your Honor. They could tell him, they could bring him to say, we need a driver, can you drive? And he shows up and shown the merchandise, looks at it, handles it, and then drives the car. Isn't that sufficient circumstantial evidence to go to the jury? Well, but in this case, that didn't was the case. Tell me where I'm wrong. In this, if you examine the audio of the participation of defendant in this case, you will find out that he didn't know anything about the conspiracy. As soon as he got into the place, it was the agent who told him to get out of the car and to go to inspect the drug that was supposed to be distributed. He didn't make any, he didn't communicate that he wanted to inspect it. It was the agent who told him to do that. Secondly. But he went and inspected it. He didn't even know the amount of the drugs that were supposed. Didn't he, I haven't seen the video, so you I'm sure are more familiar with it than I am, but did he actually pick up some of the blocks? Well, he went to the trunk of the car, and he didn't pick it up. He was shown the bricks. And as I recall, it was the agent who opened it, and he took a look of it, and he touched it. But he wasn't the one who, he didn't pick it up, and he didn't examine it. And it only lasted a few seconds. And what it could be drawn for that instance is that it was at that very moment that he realized that he was dealing with narcotics. Because prior to that, he didn't make any, he didn't give any signs saying that he knew that he was dealing with drugs. As a matter of fact, Your Honor. Would your client take the stand and say what you're saying here now? Excuse me? Did your client tell the jury at that moment when I realized it was not what I thought I was transporting? Well, Your Honor, as part of the evidence that was introduced in the trial, he gave, I think it was like 45 minutes after his arrest, he gave a voluntary statement explaining what he was doing there. And what he told the agents was that he was in a gut fighting arena, you know, that is a very famous sport here in Puerto Rico. And he was approached by a person whom he identified. He told the agent that it was Charlie. And the person told him that he could go with another person to a certain place to pick up some material that he believed that it was either vitamins or medicines that were supposed to be given to those caught. But at the same time, that were not allowed or they were not approved either by the regulations of the gut fighting arena or the FDA. So he had some knowledge that something illegal was about to take place. But he didn't know that that conspiracy was about some distribution of narcotics. And that is the important thing that we are bringing to this court, that the evidence failed to establish beyond reasonable doubt that he joined that conspiracy knowing that that conspiracy dealt with the distribution of narcotics. It seems to me that what you really have here is conflicting evidence. The government claims that the circumstantial evidence proves beyond a reasonable doubt that he was part of the conspiracy based on the fact that he handled the material and then proceeded to get in the car to drive it. And you claim that your client didn't know it until that point and was surprised by it. And that's a typical issue for the jury to decide. But if you watch the video, you will find out and you will realize that as soon as he saw what was inside the trunk, he was arrested. He wasn't even given time to tell the agent, listen, this is not what I'm here for. Because he was immediately arrested right after he saw whatever was inside the trunk. So the evidence did not establish, even the circumstantial evidence did not establish that he was a willing participant in that conspiracy and that he knew prior to getting there and seeing what was inside the trunk that he was dealing with narcotics. The evidence does not have any – does not show, Your Honor, that he knowingly engaged in that type of conspiracy. Because he didn't – he wasn't even given the chance to, you know, to react to what he was seeing because he was immediately arrested right after it was shown whatever was inside the trunk of a car. And – What's the significance in your view of the report that there would be a white Ultima showing up with two people and then he's in that white Ultima? Wouldn't that be some evidence for the jury to conclude that – Well, what the agent was told was that two persons in that Ultima were going to pick up the narcotics. But when the agent asked one of the other co-defendants who was the person, because there was evidence that the agent specifically asked who was the other person, the co-defendant could not give him any names, could not identify who the person is. So the only information that was given to the agent at that point was that two persons were going to get into the site driving an Ultima. And one of those persons that were inside the car was the one who was supposed to be the driver. But no information was given to the agent as to the identity of that other person. So that's why we are arguing that the agent – and he testified that at the stand that he didn't know anything regarding the appellant in this case because he didn't have any information as to his identity, as to what he was supposed to do. And he became familiar to this person at that moment when they arrived to the site and this interaction between the agent and the appellant took place. And it is important to, you know, to express to this Court that if you review the conversation between the agent and the appellant, there's no reference by the agent that he was dealing with drugs. Not even – they never mentioned cocaine, not even mention the common coded names that are given to the cocaine. He just said that it was 48, but he didn't say 48 – that amount, 48 of what? There's no mention as to illegal drugs. So when you take that and you also take into account what the appellant told the agents right after his arrest, that he thought that he was dealing with medicines and vitamins for animals, then the conclusion has to be that he was not aware that he was dealing with a conspiracy to distribute drugs. And the fact that the government alleged in his brief that he was paid $1,000 and that was a huge amount for a person who was supposed to drive a car, I submit to this Court that according to the government, the value of these drugs was close to $1.2 million. So $1,000 to drive a car does not correspond to that huge amount of drugs that the government, you know, alleges that it was the value of that 48 kills. Thank you. Good morning again, Your Honors. Maynard Schwartz once more for the United States. Martinez makes a lot of the fact that he wasn't mentioned by name in any of the conversations between Pedro Whip-Kelley, who was the contact of the undercover agent, and Agent Fernandez. However, what we do know is that Whip-Kelley told the agent that La Columbiana was sending two men to pick up the drugs, and there was testimony at trial that La Columbiana was an apparently female figure believed to be part of the Colombian drug trade, and that this 48-kilo delivery was a test run for the establishment of a new drug trafficking organization in Puerto Rico. So while he didn't give the agent the name of Martinez Lantigua, he said that he was someone who was picked by La Columbiana. And then later he said, they're going to be arriving in a white Nissan Altima. And indeed, two men arrived in a white Nissan Altima. One of them was Martinez Lantigua. And when he was asked by the agent who was going to drive the drugs away, Martinez Lantigua nodded, saying that he was going to be the one driving the drugs away. And again, the jury heard that testimony. Did he mention drugs when he asked that question? No, Your Honor. He just said who's going to be driving? Who's going to, I think, drive the packages. Do we know anything about the practices of this conspiracy as to what kind of people they choose to be couriers? Do they choose people who know the full extent of the conspiracy, or do they choose people that don't have any idea what they're doing? Yes, Your Honor. In contrast to some other conspiracies and other cases, the best evidence here is what they did with the undercover agent, who was actually hired to bring the drugs by boat from St. Thomas to Puerto Rico. And they didn't disguise these packages. They didn't try to hire someone to move something else. They were very open with the undercover agent that this is cocaine. There were conversations when he received the packages in St. Thomas. He looked at them, found that some of the packages were wrapped a little differently, and had actually some conversations with Whip Kelly that he was worried some of it was heroin and that he wasn't charging the appropriate price. So the evidence of the way this conspiracy worked is that when they brought someone in to transport the drugs, that person was well aware of what was going on. In addition, Martinez mentioned his statement that he gave to the officers voluntarily about 45 minutes after he was arrested. And by his statement, he was recruited for this some days before. I think two or three days before was what the statement was, so not at the very last moment. And he said he was recruited by somebody named Charlie. And the jury heard testimony that Charlie is a nickname for Carlos. When you say this, that just repeats the ambiguity in the case, right? His statement is that he was recruited not for drugs but just for the rendezvous to pick up something. Correct? Well, his testimony was that he knew it was something illegal. But not drugs. That's his story. Yeah. I'm sorry. What I'm trying to explain is that there's an additional link that was testified at trial, that he was recruited by someone named Charlie who was actually part of the drug trafficking organization and was a Carlos in the gray car with Pedro Whip Kelly. It's one additional link between the defendant and the drug trafficking organization. In addition, the person that he was with, remember, the testimony was that there would be two people coming in the white Nissan to pick up the drugs. In his statement, he referred to that other person as his good friend, Ramon Copeland. It wasn't a stranger. It wasn't someone that he just met for the purpose of picking up these drugs. He had that connection as well. That relationship existed. In addition, there's no evidence of surprise or what his reaction was anything other than calm acceptance when he actually saw the drugs, touched the drugs. The agent testified that he seemed to test the consistency of the bricks, consistent with checking to be sure that they were what they appeared to be. And, in fact, the agent said, quote, he seemed like he knew what he was doing when he was asked about Martinez's demeanor. And, again, the jury was entitled to credit that testimony. If Your Honors have no further questions, we'll submit on the briefs. Thank you. Your Honor, we submit to this court that the government's implication that Charlie was Carlos with Kelly is mere speculation. Nothing in the evidence, nothing that was presented in court made that relation. As a matter of fact, there was no evidence stating that Mr. Martinez Lantewa knew any other of the co-defendants in this case. The only person who he admitted to know was Coupling, which was the other person inside the Ultimo. So stating that Charlie was Carlos, another co-defendant in this case, is just not based on the evidence that was presented in court. And we submit to this court that mere association with other co-defendants does not satisfy the burden of proof that the government has to establish in order to obtain a guilty verdict in a conspiracy case. So we respectfully submit to this court that in this case the government failed to meet his burden of proof, and therefore there was no evidence that would satisfy the guilty verdict of Mr. Martinez Lantewa in this conspiracy case. Respectfully, the form is submitted. Thank you. All rise. The session of the Honorable United States Court of Appeals is now recessed. At the last hearing tomorrow morning, God save the United States of America and this honorable court.